Wilkin, J.
Section 3384, Revised Statutes (the law at the time of the amalgamation), provides as follows:
Upon the election of the first board of directors of the company created by the agreement of consolidation, the rights, privileges and franchises of such company and all the property, and debts due on account of subscriptions of stock or other things in action, shall be deemed to be transferred to and vested in such new company, all property and other interests shall be effectually the property of the new company as they were of the parties to the agreement * * * but all rights of creditors, and all liens upon property of either shall be preserved unimpaired, and the respective companies may be deemed to be in existence to preserve the same; and all debts, liabilities and duties of either shall thenceforth attach to the new, and be enforced against it as if such debts, liabilities and duties had been contracted by it.
The consolidation or absorption of The A. B. C. Co. into the defendant company, though in fact a dissolution of the constituent company, did not destroy its existence in contemplation of law for one purpose. It is deemed still to have a being to answer the suit of its creditors; the legal entity survives the merger, with its property, for this purpose.
Such seems to be the rationale of the case of Compton v. Railway Co., 45 Ohio St., 592.
But the opinion in that case refers to this legal conception as a fiction of the chancellor to protect creditors.
*162 This seems necessarily to involve the idea that the merger of the two companies is nevertheless an actual blending of the absorbed and the absorbing corporations into one composite legal person. The notion of separate entity is only a figment of the mind, not appropriate to the case at bar, for the tort-obligor here is The N. O. T. Co., not The A. B. C. Co.
The composite or consolidated company, by express declaration of the statute, is liable for the obligations of the component companies. So that if a judgment had been- taken in the- case against The A. B. C. Co., that judgment would have immediately become the obligation of The N. O. T. Co. Therefore The N. O. T. Co. had an interest in the case, to. defeat a recovery.
The determinative question is: Did the latter company appear in the case?
Stipulation No. 11 in the agreed statement of facts signed and filed in the suit by the plaintiff and the now defendant, The N. O. T. Co., gives the answer to this question. By that stipulation The N. O. T. Co. admits that the answer which its attorneys filed in the case was only ostensibly the answer of The A. B. C. Co.; that The N. O. T. Co. requested its attorneys to prepare and file the answer, and paid them for that service. The inference is that the service was rendered for The N. O. T. Co. at whose instance it was performed, and that the service was for the benefit of the latter company, which paid for the service, to defend it from liability for its own wrong.
The conclusion,, therefore, must be that the attorneys for The N. O. T. Co. who appeared only *163 ostensibly for The A. B. C. Co., which'was sued by mistake, appeared in fact as attorneys :for and in behalf of-The N. O. T. Co.
Our statute of amendments is-very -liberal. In furtherance of justice the court-may ainehd ahy pleading, process or proceeding by adding or striking out the name of any party, or by correcting a mistake in the name of a party or; a mistake in any other respect. Section 11363,' General Code.
The real party who did the wrong complained of was in court. It operated the railway on which it invited the plaintiff to become a passenger, under the name A. B. C. published on the'cars. The plaintiff naturally mistook The A. B. C. Company for the owner and operator of the railway, and sued it for his damage instead of The N. O. T. Co., the real party responsible for his injury.
The court was right in amending the proceeding by substituting the name of the real defendant for whom its own attorneys appeared and made the defense for it in fact, though ostensibly for the company which was sued by mistake and ■ whose legal personality, franchises, assets and obligations it had absorbed.
Having voluntarily come into court, though in the guise of The A. B. C. Co., and filed an answer in its own defense, though ostensibly for the nominal defendant sued by mistake, The N. O. T. Co. stopped the statute of limitations from running in its favor during the long period it graciously permitted the case to be continued in the false hope that the bar of the statute would ripen.
The clever argument made by counsel for defendant in error is that The N. Q. T. Co. was free *164 to let the plaintiff deceive himself to the end of time; it was not the defendant’s duty to “undeceive” him. True; and counsel frankly state that the defendant was aware of plaintiff’s mistake but contributed fn no way to that mistake. True, also. But that mistake became a mere irregularity in the judicial formulary of the suit when the real party came to the defense wearing the mask of the formal party. A court of law is a dangerous place for masquerade, for the law looks beneath the apparent and beholds the real.
Counsel naively, assert that The N. O. T. Co. had a perfect right to employ counsel to defend for The A. B. C. Co. Yes; but at the risk of being substituted as soon as the plaintiff discovered he had sued the wrong company and that the right one was in court defending. Counsels’ mistake was in thinking their client could enjoy the privilege of defending a lawsuit and dodge the responsibility that goes with it.
Assenting to the plaintiff’s mistake, the defendant accepted the suit and thus cured the irregularity. “Consensus tollit errorem is a maxim of the common law and the dictate of common sense,” says Broom, citing Coke, “for qui facet consentiré videtur!’
The defendant’s innocent mistake of law neatly and effectually corrected the plaintiff’s innocent mistake of fact, and repaired the defect in the title of the suit.

Judgment of the circuit court reversed and that of the common pleas affirmed.

Shauck, C. J., Johnson, Donahue, Wanamaker and Newman, JJ., concur.